Clyde DeWitt
Nevada State Bar No. 9791
Law Offices of Clyde DeWitt,
    A Professional Corporation
732 South Sixth Street, Suite 100
Las Vegas, NV 89101
(702) 386-1756
*clydedewitt@earthlink.net*

Allen Lichtenstein
Nevada State Bar No. 3992
3315 Russell Road, No. 222
Las Vegas, NV 89120
(702) 433-2666; Fax: (702) 433-9591
*alichtensteinlaw@aol.com*

Counsel for Plaintiff,
Arrow Productions, Ltd.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

**SOUTHERN DIVISION**

| | |
|---|---|
| ARROW PRODUCTIONS, LTD., a Nevada Corporation,<br>                Plaintiff,<br>v.<br>V.C.X. LTD., a Nevada Corporation, DAVID H. SUTTON, an Individual and DOES 1-10,<br>                Defendants. | Case Number **2:09-cv-0737-PMP-PAL**<br><br>Hon. Philip M. Pro,<br>    United States District Judge<br><br>Hon. Peggy A. Leen,<br>    United States Magistrate Judge<br><br>**PLAINTIFF'S PROPOSED PRETRIAL ORDER**<br><br>**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]** |

Pursuant to Local Rules 16-3(c), 16(4) and 26-1(e)(5), Plaintiff submits the following Proposed Pretrial Order:

**PRELIMINARY STATEMENT**

As of the date that this document was due (according to the January 4, 2011 order of Magistrate Judge Leen), the attorneys for the parties (Messrs. DeWitt and Riley, respectively) believed that a settlement had been reached, a settlement agreement that those attorneys had reduced to writing. That transpired after Messrs. DeWitt and Riley spent many hours on the phone over three days (with each constantly in touch with his respective client), although the apparent agreement was not reached until a few minutes before the joint pretrial order was due. The attorneys then filed a notice of settlement, the settlement obviously eliminating the need for a Joint Pretrial Order.

Once the notice had been filed, Mr. DeWitt sent to Raymond Pistol, the sole owner and officer of Plaintiff corporation, a copy of the settlement agreement document at which Messrs. DeWitt and Riley had arrived. Mr. Pistol, in turn, contacted Mr. Lichtenstein, whom Plaintiff has on retainer and who is co-counsel in this case. Messrs. Pistol and Lichtenstein met at the first opportunity to discuss the document. A second meeting took place at the next opportunity involving Messrs. Pistol, Lichtenstein and DeWitt, late Friday afternoon, January 21, 2010, three days after the settlement notice was filed. It was clear from the meeting that Mr. Pistol never agreed to a highly material term of the settlement agreement. As to the

relevant term, the situation was much like the ships Peerless case that everyone reads in law school;[1] there never was a meeting of the minds between the parties as to the subject, material term.

On the ensuing Monday morning (January 24, 2011), Mr. Lichtenstein called Mr. Riley clearly notifying him of the problem.[2] What should have been clear to everyone at that point and was clear to the undersigned was that either (1) if the settlement were to stand, the settlement agreement included a commitment to submit the judgment and consent decree papers that were due by Friday, January 28, 2011; or (2) if the settlement were not to stand, the Joint Pretrial Order was already overdue. Nonetheless, neither of Plaintiff's attorneys have heard from or received a message from Mr. Riley since Mr. Lichtenstein's phone message a week ago.

Defendants have never served their disclosures pursuant to FED. R. CIV. PROC. 26(a)(3). Therefore, the undersigned does not have their witness list or exhibit list. However, the undersigned has made best efforts below to estimate the Defendant's side of the case for the court's information.

---

[1] *Raffles v Wichelhaus*, EWHC Exch. J19 (1864).

[2] In Mr. Lichtenstein's words, he "called [Mr.] Riley and left a message stating that there was apparently miscommunication between Clyde Dewitt and Raymond Pistol concerning acceptable settlement terms, and that [Mr. DeWitt's] memo and other papers, while accurately reflecting his own understanding of acceptable terms, did not comport with [Mr. Pistol's]. This became clear once [Mr. Pistol] actually had the chance to read the papers. My message to [Mr.] Riley stated that if he would like to continue further talk concerning settlement, he can contact either [Mr. DeWitt] or me."

PLAINTIFF'S PROPOSED PRETRIAL ORDER
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

Case Number 2:09-cv-0737-PMP-PAL

K:\Files\Pistol 0518\VCX 002\11-007 -p- Non-Joint Pretrial Order.wpd

**Local Rule 16-3(c)(1): A concise statement of the nature of the action and the contentions of the parties.**

This is a court trial on the underlying action for copyright and trademark infringement. Plaintiff, Arrow Productions, Ltd. ("Arrow") and Defendant V.C.X., Ltd. ("VCX") are competitors, each primarily involved in the distribution of classic adult motion pictures. Defendant David H. Sutton is the owner of VCX, holding all of its officer and director positions.

Involved is the copyright ownership on two, adult motion pictures that were produced in the early 1970s and have become cult movies, "Deep Throat" and "Devil in Miss Jones."

Each motion picture had a number of sequels and, as such, the titles each qualify for trademark protection. Indeed, Deep Throat® and Devil in Miss Jones® each are Plaintiff's registered trademarks in the United States Patent and Trademark Office.

Similarly, Linda Lovelace® appears in the titles of a series of motion pictures, is Plaintiff's registered trademark and qualifies for protection.

There is no dispute that both Arrow and VCX distributed both motion pictures with their respective titles. The only issues are the validity and ownership of the two copyrights and the validity of the two trademarks.

**Local Rule 16-3(c)(2): A statement as to the jurisdiction of the court with specific legal citations.**

1.   This Court has jurisdiction over the federal trademark claims pursuant to 28 U.S.C. § 1331 (general federal question), 15 U.S.C. § 1121(a)(trademark) and 28 U.S.C. § 1338(a)(trademark).

---

2. This Court has jurisdiction over the copyright claims pursuant to 28 U.S.C. § 1331 (general federal question) and 28 U.S.C. § 1338(a).

3. Further, because this Court has jurisdiction to address the controversy before it, 28 U.S.C. § 2201 grants the Court authority to declare the rights of the parties before it, and 28 U.S.C. § 2202 authorizes the Court to grant such further relief, including injunctive relief, as the Court may deem necessary and proper.

4. Further, this Court has supplemental jurisdiction over the trademark claims brought under Nevada law pursuant to 28 U.S.C. § 1367 because those claims are so related to claims in the action over which the court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper because all of the individual defendants reside in Clark County, Nevada and all of the entity defendants have their principal offices in Clark County, Nevada and because a substantial part of the events or omissions giving rise to the claim occurred in Clark County, Nevada. 28 U.S.C. § 1391(b)(1-2).

6. Venue is proper in this division of this district because all individual defendants reside in Clark County, Nevada and all of the entity defendants have their principal offices in Clark County, Nevada. Local Rules IA 6-1 and IA 8-1(a).

Plaintiff does not believe that any of the above will be in dispute.

\\\
\\\
\\\
\\\
\\\

**Local Rule 16-3(c)(3): A statement of all uncontested facts deemed material in the action.**

## PARTIES

1. Plaintiff Arrow Productions, Ltd. is a corporation, organized and existing under the laws of State of Nevada with its principal office in the City of Las Vegas, Clark County, Nevada.

2. V.C.X. Ltd. ("VCX") is a corporation, organized and existing under the laws of the State of Nevada with its principal office in the City of North Las Vegas, Clark County, Nevada.

3. Defendant David H. Sutton ("Sutton") is an individual who is a resident and citizen of Clark County, Nevada. He is the sole officer, director and shareholder of VCX.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

4. Plaintiff and VCX are competitors, both in the business of selling prerecorded sexually oriented motion pictures for personal home use, presently and in recent years in DVD format; and previously in VHS videotape format.

5. VCX was incorporated in 1996. Originally, however, V C X Incorporated, a California corporation, was created in 1979, along with related corporations called Direct Video Corporation and Showcase Video Corporation, during the early stages of the home videotape era. In approximately 1986, one or all of those corporations went into bankruptcy and Rudy Sutton, now deceased, who had been an employee and part owner there, purchased the rights to that corporation's film library from the corporation's bankruptcy trustee. In 1996 Rudy Sutton incorporated his ongoing business to its present corporate form. On December 14, 2006, Rudy Sutton died. Defendant David M. Sutton has been the sole

shareholder, director and officer of VCX since at least then, and was heavily involved in the company at least several years before then.

6.  VCX's stock and trade is marketing sexually oriented motion pictures in DVD format and over the Internet, which motion pictures primarily were made in the 1970s and 1980s, although it produced some movies of its own beginning in about 2004. Its library of films includes those that Rudy Sutton bought from the bankruptcy trustee of the original VCX, others that VCX has acquired rights to by copyright assignment or license and others that VCX believes are in the public domain, generally because of a belief that they were exhibited or sold prior to March 1, 1989, the effective date of the Berne Convention Implementation Act of 1988, 17 U.S.C. § 101, when the copyright law required affixation of a copyright notice as a requisite to maintaining an enforceable copyright.

**Local Rule 16-3(c)(6): Plaintiff's statement of any other issues of fact or law deemed to be material.**

7.  The "Deep Throat® Motion Picture" is a motion picture work created in approximately 1971. It is a famous motion picture, having enjoyed immense popularity since it was first made. Numerous subsequent motion pictures made and released by Plaintiff have also carried the title "Deep Throat," all with an additional subtitle, collectively the "Deep Throat® Series," beginning with the Deep Throat® Motion Picture, and as follows:

    i.    Deep Throat®

    ii.    Deep Throat® # 2[3]

    iii.    Deep Throat® # 3

---

[3] As noted, *infra*, there were two versions of this motion picture, albeit having substantial much in common.

   iv. Deep Throat® # 4

   v. Deep Throat® # 5

   vi. Deep Throat® # 6

   vii. Deep Throat® the Quest Begins

   viii. Deep Throat® the Quest Jailbreak

   ix. Deep Throat® the Quest #3

   x. Deep Throat® the Quest #4

   xi. Deep Throat® the Quest #5

   xii. Deep Throat® the Quest #6

   xiii. Deep Throat® the Quest Best of 3-way

   xiv. Deep Throat® the Quest Best of Anal

   xv. Deep Throat® the Quest Best of Oral

   xvi. Deep Throat® the Quest Best of Orgies

  8. The "Deep Throat® Mark" is a common-law mark under Nevada law, a registered mark under Nevada law, Registration Number E0094112009-8 and a mark registered with the United States Patent and Trademark Office, Registration Number 2993913. The Deep Throat® Mark is a famous trademark, as that term is defined and understood under NEV. REV. STAT. § 600.435 and 15 U.S.C. § 1125(c).

  9. The central character in the Deep Throat® Motion Picture is Linda Lovelace™, portrayed in that original motion picture by an actress whose real name was Linda Susan Boreman, according to a book she published in 1980 about the making of Deep Throat® Motion Picture.[4]

---

[4] M. McGrady and L. Boreman, ORDEAL (Citadel - Kensington Publishing Corp. 1980).

1  10. The Deep Throat® Motion Picture was without exception billed as "Deep Throat, Starring Linda Lovelace." Two subsequent movies other than the Deep Throat series with the Linda Lovelace™ character in the title are is follows:

    i. Linda Lovelace – Confessions of Linda Lovelace

    ii. Linda Lovelace – Stars Who Do Hardcore Throat-F***[5]

11. Additionally, the Linda Lovelace™ character was played by Linda Susan Boreman in one version of Deep Throat #2. Different actresses portrayed Linda Lovelace™ in Deep Throat #2 when it was re-edited, as well as in Deep Throat #3, Deep Throat #4 and Deep Throat #5.

12. In neither of those two, subsequent Linda Lovelace™ motion pictures was the Linda Lovelace™ character played by Linda Susan Boreman, who died in April, 2002, although Linda Susan Boreman's portrayal of that character appeared in trailers associated with those motion pictures.[6]

13. Linda Lovelace™ is thereby a trademark of the "Linda Lovelace™ Mark;" it is registered as such with the Secretary of State of the State of Nevada, Registration Number E0139232009-6; an application has been filed in the United States Patent and Trademark Office, Serial Number 78869507, has been published there for opposition in 2008 with no opposition filed, and is awaiting the filing of an affidavit of use. Linda Lovelace™ is a famous trademark.

---

[5] The last word of this title replaces with symbols the last three letters of a four-letter word that is generally considered offensive in formal settings.

[6] A "trailer," notwithstanding its name, generally appears prior to the feature motion picture, its function being to show highlights of and advertise other motion pictures. In mainstream motion picture theaters, they typically are promotions of upcoming motion pictures or motion pictures currently showing in other theaters operated as a part of the same chain.

14. The Deep Throat® Motion Picture was made in or about 1971 by Plaintiff.[7] It was filmed on color motion picture film. Plaintiff remains in possession of the internegative.[8]

15. For the Deep Throat® Motion Picture, after it was made and answer prints struck, Plaintiff maintained control of all of those prints. Each time the Deep Throat® Motion Picture played in a theatre, the print never left Plaintiff's control. Rather, it was "four-walled," meaning that Plaintiff's employees rented the theater, sold tickets to the theatergoers, collected the tickets and operated the projector.

16. Therefore the theatrical exhibition of the motion picture by Plaintiff did not constitute "publication" under the Copyright Act, so no copyright notice was required to be affixed to the work.

17. When home videotape was introduced in the late 1970s, Plaintiff created videotapes of the Deep Throat® Motion Picture, always containing a copyright notice as required. By that time, all prints also contained a copyright notice.

---

[7] The motion picture was actually created and directed by the late Gerard Damiano as a work for hire of the predecessor corporation to Plaintiff Arrow Productions, Ltd.

[8] An internegative is motion picture film stock used to make release prints for distribution to movie theaters. After a film is shot, the original negatives – taken directly from the camera equipment – are edited into correct sequence and printed onto fresh stock as a cohesive film, creating an interpositive print used for color timing. From the interpositive, answer prints, which include the color-corrected imagery and a properly synced sound track are made. Once approved by the studio, the final answer print is made into an internegative used for striking copies that will be delivered to theaters for viewing.

1  18. The first time that Plaintiff voluntarily relinquished control of any copy of the Deep Throat® Motion Picture was on videotape, and those videotapes all included copyright notices.[9]

  19. The copyright on the Deep Throat® Motion Picture was registered in March of 1979 in the name of Plaintiff and a copyright certificate subsequently issued in due course.

  20. In sum, Plaintiff owns the copyright on the Deep Throat® Motion Picture and the trademark rights to the Deep Throat® Mark and the Linda Lovelace™ Mark.

  21. The "The Devil in Miss Jones® Motion Picture" is a motion picture work created in approximately 1971. It is a famous motion picture, having enjoyed immense popularity since it was first made. Numerous subsequent motion pictures made and released by Plaintiff have also carried the title "The Devil in Miss Jones," all with an additional subtitle, collectively the "The Devil in Miss Jones® Series," beginning with The Devil in Miss Jones® Motion Picture, and as follows:

  i. The Devil in Miss Jones®

  ii. The Devil in Miss Jones® 2

  22. Additionally, the following Devil in Miss Jones titles were made by VCA Pictures by virtue of a license from Plaintiff:

  iii. The Devil in Miss Jones® 3.

  iv. The Devil in Miss Jones® 4.

  v. The Devil in Miss Jones® 5.

  vi. The Devil in Miss Jones® 6.

---

[9] Plaintiff has been made aware of "pirated" copies – that is copies made without permission from the copyright owner – in violation of Plaintiff's copyright.

Page 11

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

Case Number 2:09-cv-0737-PMP-PAL

K:\Files\Pistol 0518\VCX 002\11-007 -p- Non-Joint Pretrial Order.wpd

23. The "Devil in Miss Jones® Mark" is a common-law mark under Nevada law, and a mark registered with the United States Patent and Trademark Office, Registration Number 3483747. The Devil in Miss Jones® Mark is a famous trademark, as that term is defined and understood under NEV. REV. STAT. § 600.435 and 15 U.S.C. § 1125(c).

24. The Devil in Miss Jones® Motion Picture was made in or about 1973 by Pierre Productions, Inc.[10] Approximately one year after The Devil in Miss Jones® Motion Picture was made, Pierre Productions, Inc. assigned the copyright to Plaintiff. It was filmed on color motion picture film. Plaintiff remains in possession of numerous prints of The Devil in Miss Jones® Motion Picture, which prints all were struck during or shortly after 1973; each print includes the required copyright notice, conspicuously and consistent with all legal requirements.[11]

25. For The Devil in Miss Jones® Motion Picture, after it was made and answer prints struck, Plaintiff maintained control of all of those prints. Each time The Devil in Miss Jones® Motion Picture played in a theatre, the print never left Plaintiff's control. Rather, it was "four-walled," meaning that Plaintiff's employees rented the theater, sold tickets to the theatergoers, collected the tickets and operated the projector.

26. Therefore the theatrical exhibition of the motion picture by Plaintiff did not constitute "publication" under the Copyright Act, so no copyright notice was required to be affixed to the work.

---

[10] The motion picture was actually created and directed by the late Gerard Damiano as a work for hire, for which reason the copyright was owned by Pierre Productions, Inc.

[11] There are prints of The Devil in Miss Jones® Motion Picture in existence, and probably were more in the past, with no copyright notice. However, those all were unauthorized prints.

**Page 12**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

Case Number 2:09-cv-0737-PMP-PAL

K:\Files\Pistol 0518\VCX 002\11-007 -p- Non-Joint Pretrial Order.wpd

27. When home videotape was introduced in the late 1970s, Plaintiff created videotapes of The Devil in Miss Jones® Motion Picture, always containing a copyright notice as required. By that time, all authorized prints also contained a copyright notice.

28. The first time that Plaintiff voluntarily relinquished control of any copy of The Devil in Miss Jones® Motion Picture was on videotape, and those videotapes all included copyright notices.[12]

29. The copyright on The Devil in Miss Jones® Motion Picture was registered in March of 1979.

30. In sum, Plaintiff owns the copyright on The Devil in Miss Jones® Motion Picture and the trademark rights to The Devil in Miss Jones® Mark and the Linda Lovelace™ Mark.

31. In early 2009, Defendants caused thousands of copies of the Deep Throat® Motion Picture using the Deep Throat® Mark and the Linda Lovelace™ Mark and of The Devil in Miss Jones using The Devil in Miss Jones® Mark, all of which were made and distributed throughout at least Nevada and the rest of the United States, and possibly world-wide.

**Local Rule 16-3(c)(4): A statement of the contested issues of fact in the case as agreed upon by the parties.**

The undersigned believes that the issues will be as follows:

1. Whether the motion picture Deep Throat was published without a copyright notice and therefore is in the public domain.

---

[12] Plaintiff has been made aware of "pirated" copies – that is copies made without permission from the copyright owner – in violation of Plaintiff's copyright.

2.   Whether Plaintiff owns the copyright to Deep Throat.

3.   Whether the motion picture Devil in Miss Jones was published without a copyright notice and therefore is in the public domain.

4.   Whether Plaintiff owns the copyright to Devil in Miss Jones.

5.   Whether Deep Throat® is an enforceable trademark owned by Plaintiff.

6.   Whether Devil in Miss Jones® is an enforceable trademark owned by Plaintiff.

7.   Whether Linda Lovelace® is an enforceable trademark owned by Plaintiff.

8.   What is the appropriate measure of damages?

Plaintiff is unaware of Defendant's specific position as to any of the above.

**Local Rule 16-3(c)(5): A statement of the contested issues of law in the case as agreed upon by the parties.**

1.   What is the identity of the owner of the copyright to DEEP THROAT?

2.   Is the copyright to the motion picture DEEP THROAT valid?

3.   What is the identity of the owner of the copyright to DEVIL IN MISS JONES?

4.   Is the copyright to the motion picture DEVIL IN MISS JONES valid?

5.   Does Plaintiff Arrow Productions, Ltd. have the right to enforce the trademark DEEP THROAT®?

6.   Does Plaintiff Arrow Productions, Ltd. have the right to enforce the trademark LINDA LOVELACE™?

7.   Does Plaintiff Arrow Productions, Ltd. have the right to enforce the trademark DEVIL IN MISS JONES®?

8. What is the appropriate measure of damages?    The amount of damages. Plaintiff has the right to elect between statutory and actual damages at any time before judgment.

Plaintiff is unaware of Defendant's specific position as to any of the above.

**Local Rule 16-3(c)(7): Defendant's statement of any other issues of fact or law deemed to be material.**

Unknown.

**Local Rule 16-3(c)(8): Lists or schedules of all exhibits that will be offered in evidence by the parties at the trial. Such lists or schedules shall describe the exhibits sufficiently for ready identification.**

**(A) The exhibits the parties agree can be admitted at trial..**

Unknown.

**(B) Exhibits to which objection is made and state the grounds therefor.**

**Plaintiff's Exhibits:**

1. Filings from the United States Copyright Office concerning the motion picture DEEP THROAT.

2. Filings from the United States Copyright Office concerning the motion picture DEVIL IN MISS JONES.

3. Trademark registration in the United States Patent and Trademark Office for the mark DEEP THROAT®.

1    4.  Trademark registration with the Nevada Secretary of State for the mark DEEP
2    THROAT®.

3    5.  Trademark registration in the United States Patent and Trademark Office for
4    the mark LINDA LOVELACE®.

5    6.  Trademark registration with the Nevada Secretary of State for the mark LINDA
6    LOVELACE®.

7    7.  Copies of DEEP THROAT purchased by Plaintiff and sold by Defendant
8    V.C.X., Ltd.

9    8.  Copies of DEVIL IN MISS JONES purchased by Plaintiff and sold by
10   Defendant V.C.X., Ltd.

11   9.  Financial records of Defendant V.C.X., Ltd. produced in response to Plaintiff's
12   discovery request concerning the exploitation of the copyrights and trademarks associated
13   with the motion picture DEEP THROAT and establishing the amount of income generated
14   by Defendant V.C.X., Ltd. therefrom.

15   10. Financial records of Defendant V.C.X., Ltd. produced in response to Plaintiff's
16   discovery request concerning the exploitation of the copyrights and trademarks associated
17   with the motion picture DEVIL IN MISS JONES and establishing the amount of income
18   generated by Defendant V.C.X., Ltd. therefrom.

19   11. Videotapes of DEEP THROAT.

20   12. Videotape of DEVIL IN MISS JONES.

21   13. Film print of DEVIL IN MISS JONES.

22   14. Documents establishing the chain of title to DEEP THROAT.

23   15. Documents establishing the chain of title to DEVIL IN MISS JONES.

24   16. Letter concerning Plymouth Distributors, Inc.

PLAINTIFF'S PROPOSED PRETRIAL ORDER
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

Case Number 2:09-cv-0737-PMP-PAL

K:\Files\Pistol 0518\VCX 002\11-007 -p- Non-Joint Pretrial Order.wpd

17. Ruling of United States District Court for the Central District of California in 2005, establishing the copyright ownership of DEVIL IN MISS JONES.

Plaintiff is unaware what, if any, objections that the Defendants will advance to any of the above.

**Defendants' Exhibits:**

Unknown.

**Local Rule 16-3(c)(9): A statement by each party identifying any depositions intended to be offered at the trial, except for impeachment purposes, and designating the portions of the deposition to be offered.**

The parties do not anticipate the introduction of any depositions.

**Local Rule 16-3(c)(10): A statement of the objections, and the grounds therefor, to deposition testimony the opposing party has designated.**

Does not apply.

**Local Rule 16-3(c)(11): A list of witnesses, with their addresses, who may be called at the trial.**

**Plaintiff's Witnesses:**

1. Raymond Pistol, c/o Arrow Productions, Ltd., 631 Las Vegas Boulevard South, Las Vegas, NV 89101; (702) 453-7938; will be called.

2. Charles Bernstene, c/o Arrow Productions, Ltd., 631 Las Vegas Boulevard South, Las Vegas, NV 89101; (702) 453-7938; will be called.

PLAINTIFF'S PROPOSED PRETRIAL ORDER
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

Case Number 2:09-cv-0737-PMP-PAL

K:\Files\Pistol 0518\VCX 002\11-007 -p- Non-Joint Pretrial Order.wpd

3.   Paul Bloch, c/o Arrow Productions, Ltd., 631 Las Vegas Boulevard South, Las Vegas, NV 89101; (702) 453-7938; will be called.

4.   Defendant David H. Sutton, c/o Defendant V.C.X., Ltd., may be called.

5.   Beau Buchanon, 3914 Centre Street, #12, San Diego, CA 92103; phone (818) 559-3676; may be called.

**Defendants' Witnesses:**

Unknown.

**(12) A list of motions in limine filed, if any.**

Because this is to be a court trial, neither party anticipates filing any motion in limine.

Dated: January 30, 2011.                Respectfully Submitted,

CLYDE DeWITT
LAW OFFICES OF CLYDE DeWITT, APC

ALLEN LICHTENSTEIN, ESQ.


By:  /s/ Clyde DeWitt
          Clyde DeWitt

Counsel for Plaintiff,
Arrow Productions, Ltd.

---