1  Clyde DeWitt
   Nevada State Bar No.  9791
2  Law Offices of Clyde DeWitt,
            A Professional Corporation
3  732 South Sixth Street, Suite 100
   Las Vegas, NV 89101
4  (702) 386-1756; Fax: (310) 362-8667
   *clydedewitt@earthlink.net*
5
   Allen Lichtenstein
6  Nevada State Bar No. 3992
   3315 Russell Road, No. 222
7  Las Vegas, NV 89120
   (702) 433-2666; Fax: (702) 433-9591
8  *alichtensteinlaw@aol.com*
9  Counsel for Plaintiff,
   Arrow Productions, Ltd.
10
   Timothy C. Riley
11 *Pro Hac Vice*
   Law Office of Timothy C. Riley
12 W. Sierra Madre Blvd., Suite N
   Sierra Madre, CA 91024
13 (626) 449-4417; Fax: (626) 840-1707
   *trileylaw@aol.com*
14
   Counsel for Defendants,
15 VCX, Ltd. and David Sutton

16
17          **IN THE UNITED STATES DISTRICT COURT**

           **FOR THE DISTRICT OF NEVADA**
18
                  **SOUTHERN DIVISION**
19

20 | ARROW PRODUCTIONS, LTD., a | Case Number **2:09-cv-0737-PMP-PAL** |
21 | Nevada Corporation, |  |
   |                    Plaintiff, | Hon. Philip M. Pro, |
22 |  |       United States District Judge |
   | v. |  |
23 |  | Hon. Peggy A. Leen, |
   | V.C.X. LTD., a Nevada Corporation, |       United States Magistrate Judge |
24 | DAVID H. SUTTON, an Individual and |  |
   | DOES 1-10, | **JOINT PRETRIAL ORDER** |
25 |                    Defendants. |  |

   **[Local Rules 16-3(c), 16(4)**
26 **and 26-1(e)(5)]**

27 Pretrial Conference:
   TBD
28
   Trial:
   TBD

Pursuant to Local Rules 16-3(c), 16(4) and 26-1(e)(5), the Parties submit the following Proposed Pretrial Order:

**Preliminary Statement**

This supersedes the Proposed Pretrial Order filed by Plaintiff Arrow Productions, Ltd. on January 30, 2011.

**<u>Local Rule 16-3(c)(1): A concise statement of the nature of the action and the contentions of the parties.</u>**

This is a court trial on the underlying action for copyright and trademark infringement. Plaintiff, Arrow Productions, Ltd. ("Arrow") and Defendant V.C.X., Ltd. ("VCX") are competitors, each primarily involved in the distribution of classic adult motion pictures. Defendant David H. Sutton is the owner of VCX, holding all of its officer and director positions.

Involved is the copyright ownership on two, adult motion pictures that were produced in the early 1970s and have become cult movies, "Deep Throat" and "Devil in Miss Jones."

Each motion picture had a number of sequels and, as such, Plaintiff alleges that the titles each qualify for trademark protection. Indeed, Deep Throat® and Devil in Miss Jones® each are Plaintiff's registered trademarks in the United States Patent and Trademark Office.

Similarly, Plaintiff contends that Linda Lovelace® appears in the titles of a series of motion pictures, is Plaintiff's registered trademark and, Plaintiff contends and Defendants dispute that it qualifies for protection.

---

**Page 2**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

There is no dispute that both Arrow and VCX distributed both motion pictures with their respective titles.  The only issues are the validity and ownership of the two copyrights and the validity of the two trademarks.

**Local Rule 16-3(c)(2): A statement as to the jurisdiction of the court with specific legal citations.**

1    This Court has jurisdiction over the federal trademark claims pursuant to 28 U.S.C. § 1331 (general federal question), 15 U.S.C. § 1121(a)(trademark) and 28 U.S.C. § 1338(a)(trademark).

2    This Court has jurisdiction over the copyright claims pursuant to 28 U.S.C. § 1331 (general federal question) and 28 U.S.C. § 1338(a)(copyright).

3    Further, because this Court has jurisdiction to address the controversy before it, 28 U.S.C. § 2201 grants the Court authority to declare the rights of the parties before it, and 28 U.S.C. § 2202 authorizes the Court to grant such further relief, including injunctive relief, as the Court may deem necessary and proper.

4    Further, this Court has supplemental jurisdiction over the trademark claims brought under Nevada law pursuant to 28 U.S.C. § 1367 because those claims are so related to claims in the action over which the court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5    Venue is proper because all of the individual defendants reside in Clark County, Nevada and all of the entity defendants have their principal offices in Clark County, Nevada and because a substantial part of the events or omissions giving rise to the claim occurred in Clark County, Nevada.  28 U.S.C. § 1391(b)(1-2).

---

**Page 3**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

6      Venue is proper in this division of this district because all individual defendants reside in Clark County, Nevada and all of the entity defendants have their principal offices in Clark County, Nevada.  Local Rules IA 6-1 and IA 8-1(a).

None of the above jurisdiction or venue assertions are in dispute.

**Local Rule 16-3(c)(3): A statement of all uncontested facts deemed material in the action.**

**Involved Individuals and Entities**

The following is not in dispute:

**Parties**

1.      Plaintiff Arrow Productions, Ltd. ("Plaintiff" or "Arrow") is a corporation, organized and existing under the laws of State of Nevada with its principal office in the City of Las Vegas, Clark County, Nevada.  Where acts alleged herein are designated of those of "Plaintiff" and which transpired prior to 1996, the reference is to Arrow's predecessors.

2.      V.C.X. Ltd. ("VCX") is a corporation, organized and existing under the laws of the State of Nevada with its principal office in the City of North Las Vegas, Clark County, Nevada.

3.      Defendant David H. Sutton ("Sutton") is an individual who is a resident and citizen of Clark County, Nevada.  He is the sole officer, director and shareholder of VCX and has been since the death of his father, Ruby Sutton.

4.      Arrow, VCX and Sutton sometimes are referenced herein collectively as the "Parties."

\\\

\\\

---

**Page 4**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

**Note as to the Remaining Facts**

As to the remainder of the facts, there are some that are in dispute and others that are not.  Accordingly, as to the remainder of the allegations, the following is, in tabular form, a list of each of the material facts and a statement of whether each is in dispute; where the defendants have a different version of any disputed fact, the defendants' version is set forth in the right-hand column.

| PLAINTIFF'S CONTENTIONS | DEFENDANTS' CONTENTIONS |
| --- | --- |
| **Relevant Individuals and Entities Who Are Not Parties** | / / |
| 5.      Anthony "Big Tony" Peraino ("Tony Peraino," May 10, 1915 - October 18, 1996) was involved in New York's Colombo crime family. | 5.      Defendants do not dispute this contention. / / |
| 6.      Joseph C. Peraino ("Joseph Peraino") was the brother of Tony Peraino and was involved in New York's Colombo crime family. | / / / / |
| 7.      Louis "Butch/Butchie" Peraino ("Lou Peraino", 1940 - 1999), who used the pseudonym Lou Perry, was the son of Tony Peraino. / / | 7.      Defendants dispute that Louis Peraino used the pseudonym "Louis Perry" except in regard to making what Defendants contend to be a false application for copyright to Deep Throat. |

**Page 5**

| | | |
|---|---|---|
| 1 | 8.    Joseph    Peraino,    Tony | 8.    Defendants do not dispute |
| 2 | Peraino and Lou Peraino are collectively | this contention. |
| 3 | referenced herein as the "The Peraino | / |
| 4 | Family." | / |
| 5 | 9.    Gerardo    Rocco    "Gerard" | 9.    Defendants do not dispute |
| 6 | Damiano ("Gerard Demiano," August 4, | this contention. |
| 7 | 1928 - October 25, 2008) was the director | / |
| 8 | of Deep Throat. | / |
| 9 | 10.    Rudy Sutton ("Rudy Sutton," | 10.    Defendants do not dispute |
| 10 | 1923 - 2006) prior to his death was the | this contention. |
| 11 | owner of Defendant VCX and the father of | / |
| 12 | Defendant David H. Sutton. | / |
| 13 | | / |
| 14 | **Facts Common to All Claims for Relief** | / |
| 15 | **– Generally** | / |
| 16 | 11.    Plaintiff    and    VCX    are | 11.    Defendants do not dispute |
| 17 | competitors, both in the business of selling | this contention. |
| 18 | prerecorded    sexually    oriented    motion | / |
| 19 | pictures for personal home use (presently | / |
| 20 | and in recent years in DVD format; and | / |
| 21 | previously in VHS videotape format) and | / |
| 22 | in licensing such motion pictures for use | / |
| 23 | over the Internet. | / |
| 24 | | / |
| 25 | | |

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

1    12.    Beginning during or shortly                    /

2    before 1971, Lou Peraino, with $25,000                /

3    that he had borrowed from his father,                 /

4    produced the Deep Throat® Motion                      /

5    Picture."                                             /

6    13.    During 1995, Lou Peraino,          13.    Defendants contend that

7    sold to Arrow all rights to The "Deep      Louis Peraino had no rights in the film

8    Throat® Motion Picture" and The "Devil in  Deep Throat in 1995 and the purported

9    Miss Jones® Motion Picture."               transfer to Plaintiff is meaningless.

10   14.    Since acquiring those rights,       14.    Defendants have no

11   Arrow never has relinquished or            knowledge of this contention and dispute

12   encumbered any of them.                    it on that basis.

13

14   **The Deep Throat® Motion Picture**        **Contentions as to Deep Throat**

15   **Copyright**

16   15.    The "Deep Throat® Motion            15.    *Deep Throat* was theatrically

17   Picture" is a motion picture work created  released in the United States on November

18   in approximately 1971.  It is a famous     15, 1972 by the Louis "Butchie" Peraino,

19   motion picture, having enjoyed immense     a member of the Columbo crime family

20   popularity after it was first released for under the name Vanguard Films.

21   theatrical exhibition in 1972.             Financing for the film was provided by

22   16.    Lou Peraino, with money            Louis Peraino's father Anthony "Big

23   borrowed from his father, paid Gerard      Tony" Peraino and his brother Joseph

24                                              "Joey the Whale" Peraino, both of whom

25

26                          **Page 7**

27   **PLAINTIFF'S PROPOSED PRETRIAL ORDER**
     **[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

28

     **Case Number 2:09-cv-0737-PMP-PAL**

1  Damiano $25,000 cash to make Deep
2  Throat® Motion Picture.

3      17.    The circumstances of that
4  transaction resulted in the Deep Throat®
5  Motion Picture being a "work for hire," as
6  that term is defined and understood in
7  American copyright law, vesting the
8  ownership of the copyright in Lou Peraino.

9      18.    Beginning in June of 1972,
10 Lou Peraino exhibited the Deep Throat®
11 Motion Picture, first in New York City,
12 then  in  Los  Angeles  (Hollywood),
13 California and, thereafter, elsewhere in the
14 United States, by him.  The exhibition was
15 controlled entirely by Lou Peraino.

16     19.    The exhibition of the Deep
17 Throat® Motion Picture described in the
18 previous paragraph was entirely controlled
19 and financed by Lou Peraino. Specifically,
20 that he would lease each theater from its
21 owner for a flat amount, paying cash to the
22 owner of the theater.  Then, that he would
23 hire the projectionist, ticket taker, and
24 other personnel necessary to the exhibition

were also members of the Columbo crime
family.  At its peak of popularity, the film
was shown in approximately 300 theaters
in the United States and abroad.  It ran for
over 9 years at the Pussycat Theater in
Hollywood until it closed on December 12,
1981.  The film was shown without visible
copyright notice for the entire theatrical
release  period.   The  only  attribution
contained on the theatrical version of the
film  was  the  legend  "Vanguard Films
Presents Deep Throat."

16     16.    On about March 19, 1979,
after the film had been playing for over 6
years, a purported application for United
States Copyright (PA 25-575) was made
by the Perainos in the name of Plymouth
Distributors, Inc. ("Plymouth").  Plymouth
was a corporation set up by Joseph Peraino
to distribute *Deep Throat* and several other
films. (See e.g., *United States v. Peraino*
645 F.2d 548 (6th Cir. 1981).  To avoid
prosecution, in their copyright application
the Perainos falsely identified the producer

---

**Page 8**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0-737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

of the motion picture and cause those individuals to exhibit it.  All box office receipts were retained by the him.  All of the foregoing transactions were in cash.  The surplus cash (*i.e.*, box office receipts less expenses) was transported to New York and delivered to Lou Peraino him.

**The Deep Throat® Mark**

20.     Subsequent to the release of the Deep Throat® Motion Picture, numerous motion pictures made and released or licensed by Plaintiff or Plaintiff's predecessors have also carried the title "Deep Throat," all with an additional subtitle, collectively the "Deep Throat® Series," beginning with the Deep Throat® Motion Picture, and as follows:

|  |  |  |
|---|---|---|
| i.   | Deep Throat® |
| ii.  | Deep Throat® # 2 |
| iii. | Deep Throat® # 3 |
| iv.  | Deep Throat® # 4 |
| v.   | Deep Throat® # 5 |
| vi.  | Deep Throat® # 6 |

as "Lou Perry" and the director as "Jerry Gerard." The producer was actually Louis Peraino and the director was Gerard Damiano.   The registration contained another blatant falsehood.  The registration was made in the name of Plymouth Distributors as the "employer for hire" of Deep Throat.  As will be shown at trial through the Corporate Records of the New Jersey Secretary of State, Joseph Peraino did not even form Plymouth Distributors until January 9, 1975 after the film had been playing around the country for years. These are false statements in a Copyright application subjecting it to cancellation for the reasons set forth below in the statement of issues of law.

17.     In   their   copyright application, the Perainos also falsely identified the date of first publication as January 1, 1978.   The film had been obviously playing in theaters around the country since 1972.  As addressed below in the statement of issues of law, a false

---

**Page 9**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

| | | |
|---|---|---|
| vii. | Deep Throat® the Quest Begins | representation of a material fact on an application for United States Copyright is a criminal offense. As also addressed below, this false statement alone is also sufficient to cancel the registration. |
| viii. | Deep Throat® the Quest Jailbreak | |
| ix. | Deep Throat® the Quest #3 | 18.   Beyond these issues, the United States Copyright Registration for *Deep Throat* is subject to summary cancellation for other more fatal reasons. As addressed below in the statement of issues of law, a Copyright Registration will be cancelled where : (1) the work was published before March 1, 1989; (2) the work was registered more than 5 years after the date of first publication; (3) the deposit copy does not contain a statutory copyright notice; and (4) the deposit copies of a work published before January 1, 1978 do not contain a copyright notice or the notice is defective. |
| x. | Deep Throat® the Quest #4 | |
| xi. | Deep Throat® the Quest #5 | |
| xii. | Deep Throat® the Quest #6 | |
| xiii. | Deep Throat® the Quest Best of 3-way | |
| xiv. | Deep Throat® the Quest Best of Anal | |
| xv. | Deep Throat® the Quest Best of Oral | |
| xvi. | Deep Throat® the Quest Best of Orgies | |

21.   The "Deep Throat® Mark" has been exploited by Arrow since 1996 for motion pictures, including the "Deep Throat® Motion Picture."

19.   Defendants previously retained Government Liaison Services to review the deposit copies made in regard to the March 19, 1979 registration of *Deep*

---

**Page 10**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

22.   "Deep Throat®" is a common-law mark under Nevada law, a registered mark under Nevada law, Registration Number E0094112009-8 and a mark registered with the United States Patent and Trademark Office, Registration Number 2993913.   The Deep Throat® Mark is a famous trademark, as that term is defined and understood under NEV. REV. STAT. § 600.435 and 15 U.S.C. § 1125(c). The mark has been licensed to many front-line motion picture studios, all of which recognized the validity of the mark.

**The Linda Lovelace Mark**

23.   The central character in the Deep Throat® Motion Picture is Linda Lovelace™, portrayed in that original motion picture by an actress whose real name was Linda Susan Boreman, according to a book she published in 1980 about the making of Deep Throat® Motion Picture.

Throat by Plymouth Distributors under PA 25-575.   The deposit copies were two 16 millimeter reels.   Government Liaison Services has confirmed that there is no copyright notice visible during the playing of these deposit copies.   Government Liaison Services also reviewed the deposit copy made in regard to a purported derivative work registration of *Deep Throat* made by International Home Entertainment Corporation on March 5, 1979 under PA 24-166.   That deposit copy in that case was a 60 minute videocassette that purportedly added sound synchronization as well as visual and sound enhancements to the original motion picture. Government Liaison Services has confirmed that there is likewise no copyright notice visible during the playing of the videocassette.

20.   Here, the film *Deep Throat* was clearly published in 1972 and United States Copyright Registration was not sought until 1979.   Because the deposit

---

**Page 11**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

24.     The Deep Throat® Motion Picture was without exception billed as "Deep Throat, Starring Linda Lovelace." Two subsequent movies other than the Deep Throat series with the Linda Lovelace™ character in the title are is follows:

     i.      Linda Lovelace – Confessions of Linda Lovelace

     ii.     Linda Lovelace – Stars Who Do Hardcore Throat-F*** [Title Edited]

25.     Additionally, the Linda Lovelace™ character was played by Linda Susan Boreman in one version of Deep Throat #2.  Different actresses portrayed Linda Lovelace™ in Deep Throat #2 when it was re-edited, as well as in Deep Throat #3, Deep Throat #4 and Deep Throat #5.

26.     In neither of those two, subsequent Linda Lovelace™ motion pictures was the Linda Lovelace™

copies contain no copyright notice, the registrations will be summarily cancelled once this information is brought to the attention of this Court or the Registrar of Copyrights. The film is clearly to be in the public domain.

21.     Beginning in 2004, Plaintiff began making a series of trademark registrations related to *Deep Throat*.  It is common in the adult film business to seek to protect rights in public domain films by making such registrations.  On June 6, 2004 Arrow applied for United States Trademark Registration for the standard characters "Deep Throat" pursuant to Application No. 76596548.   In the application, Plaintiff certified that Arrow Productions had exclusive use of the mark and that no other person had the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, would cause confusion.

---

**Page 12**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

1  character played by Linda Susan Boreman,

2  who died in April, 2002, although Linda

3  Susan Boreman's portrayal of that

4  character appeared in trailers associated

5  with those motion pictures.

6      27.  Linda Lovelace™ is thereby

7  a trademark of the "Linda Lovelace™

8  Mark;" it is registered as such with the

9  Secretary of State of the State of Nevada,

10  Registration Number E0139232009-6; an

11  application has been filed in the United

12  States Patent and Trademark Office, Serial

13  Number 78869507, has been published

14  there for opposition in 2008 with no

15  opposition filed, and is awaiting the filing

16  of an affidavit of use. Linda Lovelace™ is

17  a famous trademark.

18      28.  The Deep Throat® Motion

19  Picture was made in or about 1971 by

20  Plaintiff. It was filmed on color motion

21  picture film.  Plaintiff remains in

22  possession of the internegative.

23      29.  For the Deep Throat®

24  Motion Picture, after it was made and

25

26

27

28

By the time Plaintiff had made its application, 63 adult films using the words "Deep Throat" had been released by various adult film producers. Following the application, at least 51 other adult films using the words "Deep Throat" have been released by various adult film producers. For these reasons, Plaintiff did not have exclusive use of the characters deep throat and its application is subject to cancellation and Plaintiff is subject to criminal penalties for making a false application.

    22.  Pursuant to 15 U.S.C. 1501(a)(3)(D) Plaintiff was required to certify that no other person had the right to use the mark Deep Throat in commerce and was required to identify any concurrent use by other competitors, the goods and the areas in which each competitor's concurrent use existed and the periods of the competitor's use. In its application, Plaintiff failed to identify the over 114 other competitors using the term

---

**Page 13**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

1   answer prints struck, Plaintiff maintained

2   control of all of those prints.  Each time

3   the Deep Throat® Motion Picture played in

4   a theatre, the print never left Plaintiff's

5   control.  Rather, it was "four-walled,"

6   meaning that Plaintiff's employees rented

7   the theater, sold tickets to the theatergoers,

8   collected the tickets and operated the

9   projector.

10   30.   Therefore   the   theatrical

11   exhibition of the motion picture by

12   Plaintiff did not constitute "publication"

13   under the Copyright Act, so no copyright

14   notice was required to be affixed to the

15   work.

16   31.   When home videotape was

17   introduced in the late 1970s, Plaintiff

18   created videotapes of the Deep Throat®

19   Motion   Picture,   always   containing   a

20   copyright notice as required.  By that time,

21   all prints also contained a copyright notice.

22   32.   The first time that Plaintiff

23   voluntarily relinquished control of any

24   copy of the Deep Throat® Motion Picture

25

26

27

28

Deep Throat in regard to adult films

subjecting the application to cancellations

for the reasons set forh below in the

statement of issues of law.

23.   On January 1, 2005, the

Trademark Office notified Plaintiff that its

registration   was   refused   because   the

proposed mark "Deep Throat" was the title

to a single creative work in violation of

various portions of the Trademark Act and

other applicable law.

24.   On February 17, 2005,

Plaintiff responded by certifying that the

"the mark "Deep Throat" is used to

identify a series of Applicant's products

rather than a single work."

25.   On February 25, 2005, the

Trademark Office notified Plaintiff that its

application was being amended and that

the proposed mark was not being used to

protect the original film Deep Throat but

that the identification of goods/services to

be covered by the mark "is amended to

read as follows: pre-recorded videotapes

---

**Page 14**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

1  was on videotape, and those videotapes all

2  included copyright notices.

3      33.    The copyright on the Deep

4  Throat® Motion Picture was registered in

5  March of 1979 in the name of Plaintiff and

6  a copyright certificate subsequently issued

7  in due course.

8      34.    In sum, Plaintiff owns the

9  copyright on the Deep Throat® Motion

10  Picture and the trademark rights to the

11  Deep  Throat®  Mark  and  the  Linda

12  Lovelace™ Mark.

13  /

14  /

15  /

16  /

17  /

18  /

19  /

20  /

21  /

22  /

23  /

24  /

25

26

27

28

and DVD's featuring adult entertainment

programs and movies."

    26.    On September 13, 2005, The

Copyright Office issued Registration No.

2,993,913 for the mark "Deep Throat" for

use in pre-recorded videotapes and DVDs

featuring  adult  entertainment  programs

and movies." Thus, no Trademark for the

original film Deep Throat was ever issued

and does not exist.

    27.    Plaintiff also made a United

States Trademark application (85187559)

for   the   standard   characters   "Linda

Lovelace" on November 30, 2010.  Once

again  in  Plaintiff  certified  that  Arrow

Productions had exclusive use of the mark

and that no other person had the right to

use such mark in commerce either in the

identical  form  thereof  or  in  such  near

resemblance thereto as to be likely, when

used on or in connection with the goods of

such  other  person,  is  likely  to  cause

confusion.  As Arrow Productions alleges

in its Complaint, Linda Lovelace was the

---

**Page 15**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

stage name of Linda Boreman who appeared in *Deep Throat*.  She died in 2002.  Prior to making *Deep Throat*, Boreman appeared in two adult films under the name Linda Lovelace for other studios.  Following *Deep Throat* she appeared in at least 17 other films using the name Linda Lovelace.  By the time the trademark application was made, Boreman was dead and she had appeared in at least 19 other films, none of which were produced or owned by Arrow Productions, under the name "Linda Lovelace." Once again the certification of Plaintiff in its trademark application that Arrow Productions had exclusive use of the words "Linda Lovelace" is completely false.  Arrow merely distributes one of the 20 films that Boreman appeared in using the name "Linda Lovelace." As addressed below,  that  trademark application/registration is subject to summary cancellation and Plaintiff is

---

**Page 16**

1 /

2 /

subject to criminal penalties for its false application.

3 /

28. On March 8, 2011, the Trademark Office took action to refuse the application for registration of the mark "Linda Lovelace" in regard to use for "downloadable films and movies featuring adult entertainment provided via a video-on-demand service." The Trademark Office informed Plaintiff that "[r]egistration is refused because the applied-for mark, as used on the specimens of record, identifies only the name of a featured performer(s) on a sound or video recording; it does not function as a trademark to identify and distinguish applicant's goods from those of others and to indicate the source of applicant's goods/services. Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§1051-1052, 1127; *see In re Polar Music Int'l AB*, 714 F.2d 1567, 221 USPQ 315 (Fed. Cir. 1983); *In re Spirer*, 225 USPQ 693 (TTAB 1985); TMEP §§904.07(b), 1202.09(a). Sound or

4 /

5 /

6 /

7 /

8 /

9 /

10 /

11 /

12 /

13 /

14 /

15 /

16 /

17 /

18 /

19 /

20 /

21 /

22 /

23 /

24 /

25

26

**Page 17**

27

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

28

**Case Number 2:09-cv-0737-PMP-PAL**

1  /

2  /

3  /

4  /

5  /

6  /

7  /

8  /

9  /

10 /

11 /

12 /

13 /

14 /

15 /

16 /

17 /

18 /

19 /

20 /

21 /

22 /

23 /

24 /

25

26

27

28

video recordings include musical and other performances presented in recorded or electronic form.  *See* TMEP §1202.09(a). The applicant's specimens only show use of the mark on one video recording.

       29.    The Trademark office also informed Plaintiff that it must provide proof that "the name (Linda Lovelace) is used on a series of sound/video recordings, and (b) the name is promoted and recognized by others as the source of the series of sound/video recordings.  *See* TMEP §1202.09(a)-(a)(ii)(A);  *cf. In re First Draft, Inc.*, 76 USPQ2d 1183, 1190 (TTAB 2005).  Evidence of a series includes copies or photographs of at least two different CD/DVD covers or similar packaging for recorded works that show the name sought to be registered.  TMEP §1202.09(a)(i); *see In re Polar Music*, 714 F.2d at 1572, 221 USPQ at 318.  Evidence that the name is promoted and recognized by others as a source of the series includes advertising that promotes the name as the

**Page 18**

source of the series, third-party reviews showing use of the name by others to refer to the series, and/or declarations from the sound recording industry, retailers, and purchasers showing recognition of the name as an indicator of the source of a series of recordings. TMEP §1202.09(a)(ii)(A); *cf. In re First Draft*, 76 USPQ2d at 1191; *In re Scholastic, Inc.*, 23 USPQ2d 1774, 1777-78 (TTAB 1992).

30.   The Trademark Office also informed Plaintiff that it must provide proof that "the name (Linda Lovelace) is used on a series of sound/video recordings, and (b) the performer controls the quality of the recordings and controls the use of the name, such that the name has come to represent an assurance of quality to the public.   TMEP   §1202.09(a)-(a)(ii), (a)(ii)(B); *see In re Polar Music*, 714 F.2d at 1572, 221 USPQ at 318; *In re First Draft*, 76 USPQ2d at 1189-90….Evidence of control over the quality of the recordings and use of the name includes

---

**Page 19**

licensing contracts or similar documentation. TMEP §1202.09(a)(ii)(B); *see In re Polar Music*, 714 F.2d at 1568-72, 221 USPQ at 316-18. However, if the sound/video recordings are recorded directly under applicant's control, applicant may submit solely as evidence of control the following statement, verified with an affidavit or signed declaration under 37 C.F.R. §2.20: "The applicant produces the goods and controls their quality."

31.    Pursuant to 15 U.S.C. 1501(a)(3)(D) Plaintiff was required to certify that no other person had the right to use the mark Linda Lovelace in commerce and was required to identify any concurrent use by other competitors, the goods and the areas in which each competitor's concurrent use existed and the periods of the competitor's use. In its application, Plaintiff failed to identify the over 20 other competitors using the Linda Lovelace in regard to adult films

---

**Page 20**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

**Contentions as to "The Devil in Miss Jones"**

35.     "The Devil in Miss Jones® Motion Picture" is a motion picture work created in approximately 1971.  It is a famous motion picture, having enjoyed immense popularity since it was first made.  Numerous subsequent motion pictures made and released by Plaintiff have also carried the title "The Devil in Miss Jones," all with an additional subtitle, collectively the "The Devil in Miss Jones® Series," beginning with The Devil in Miss Jones® Motion Picture, and as follows:

         i.     The Devil in Miss Jones®

         ii.    The Devil in Miss Jones® 2

36.     Additionally, the following Devil in Miss Jones titles were made by VCA Pictures by virtue of a license from Plaintiff:

         iii.   The Devil in Miss Jones® 3.

subjecting the application to cancellations for the reasons set forth below in the statement of issues of law.

**Contentions as to "The Devil in Miss Jones"**

32.     The Film was owned and controlled by the Perraino brothers.  It opened on about March 28, 1973 at the Pussycat Theater, 7734 Santa Monica Boulevard, Hollywood, California.  The Perraino brothers had 2 layers of insulation built in between themselves and the criminal authorities.  Two associates of the Perraino brothers, Norman Arno ("Arno") and Joseph Torchio ("Torchio"), were in charge of distribution of the Film on behalf of the Perrainos.  They in turn hired a company called Professional Services Company owned by Charles P. Bernstene.

33.     Bernstene and Professional Services Company were responsible for delivering the Film to the Pussycat Theater – as well as the other theaters where the

---

**Page 21**

iv.   The Devil in Miss Jones® 4.

v.   The Devil in Miss Jones® 5.

vi.   The Devil in Miss Jones® 6.

37.   The "Devil in Miss Jones® Mark" is a common-law mark under Nevada law, and a mark registered with the United States Patent and Trademark Office, Registration Number 3483747. The Devil in Miss Jones® Mark is a famous trademark, as that term is defined and understood under NEV. REV. STAT. § 600.435 and 15 U.S.C. § 1125(c).

38.   The Devil in Miss Jones® Motion Picture was made in or about 1973 by Pierre Productions, Inc. Approximately one year after The Devil in Miss Jones® Motion Picture was made, Pierre Productions, Inc. assigned the copyright to Plaintiff. It was filmed on color motion picture film. Plaintiff remains in possession of numerous prints of The

Film would later be shown – and collecting the proceeds. The prints of the Film were cleansed of all identifying information and they had absolutely no copyright notice. This was done intentionally in order to avoid obscenity prosecution.

34.   On the opening night at the Pussycat, the Los Angeles Police Department ("LAPD") was there trying to find the owner of the Film. LAPD officers questioned one of the checkers who directed them to Bernstene. Bernstene was arrested and the Film prints were seized from the Pussycat Theater. Under questioning, Bernstene refused to identify the owner of the Film – the Perraino brothers. The Film prints were examined by the LAPD. However, no U.S. Copyright notice or any other indicia of ownership appeared on the prints. It was Bernstene's responsibility to make sure that there was none. After that first arrest, Arno bailed Bernstene out of jail and they

---

**Page 22**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

Devil in Miss Jones® Motion Picture, which prints all were struck during or shortly after 1973; each print includes the required copyright notice, conspicuously and consistent with all legal requirements.

39.    For The Devil in Miss Jones® Motion Picture, after it was made and answer prints struck, Plaintiff maintained control of all of those prints. Each time The Devil in Miss Jones® Motion Picture played in a theatre, the print never left Plaintiff's control. Rather, it was "four-walled," meaning that Plaintiff's employees rented the theater, sold tickets to the theatergoers, collected the tickets and operated the projector.

40.    Therefore the theatrical exhibition of the motion picture by Plaintiff did not constitute "publication" under the Copyright Act, so no copyright notice was required to be affixed to the work.

41.    When home videotape was introduced in the late 1970s, Plaintiff

were also able to obtain the return of the Film prints.  Bernstene returned the Film prints to the Pussycat Theater for the next days' showing.

35.    This process continued for the first 3 weeks that the Film ran at the Pussycat Theater.  Each day for 3 weeks: 1) Bernstene was arrested; 2) the prints of the Film were seized; 3) Arno posted bail; 4) the Film prints and Bernstene were released; and 5) the prints were returned to the Pussycat Theater by Professional Services Corporation.  The Film prints had no copyright notice during this period. Throughout this period, Bernstene also refused to identify the Perraino brothers.

36.    After about a month of this initial run at the Pussycat Theater, the Film released to about 30 or 40 additional theaters throughout the State of California. Professional Services Company delivered the prints to these theaters – again without copyright notice.  Professional Services Company also supplied the checkers to

---

**Page 23**

created videotapes of The Devil in Miss Jones® Motion Picture , always containing a copyright notice as required.  By that time, all authorized prints also contained a copyright notice

42.   The first time that Plaintiff voluntarily relinquished control of any copy of The Devil in Miss Jones® Motion Picture was on videotape, and those videotapes all included copyright notices.

43.   The copyright on The Devil in Miss Jones® Motion Picture was registered in March of 1979.

44.   In sum, Plaintiff owns the copyright on The Devil in Miss Jones® Motion Picture and the trademark rights to The Devil in Miss Jones® Mark.

45.   In early 2009, Defendants caused thousands of copies of the Deep Throat® Motion Picture using the Deep Throat® Mark and the Linda Lovelace™ Mark and of The Devil in Miss Jones using The Devil in Miss Jones® Mark, all of which were made and distributed

count the audience numbers as they went into the theaters.  Bernstene collected the money from the theaters in cash.  He counted it and delivered it to Arno and Torchio who then delivered it to the Perrainos.   On at least one occasion, Bernstene was required to deliver a briefcase full of the Film proceeds to the Perraino brothers in New York City.  Professional Services Company performed these services for about 8 more months during this theatrical distribution throughout California.  During this entire period, the Film played without copyright notice.

37.   The first 2 of the obscenity cases against Bernstene related to the Film went to trial thereafter in Los Angeles County Criminal Court.  Bernstene was represented by Los Angeles attorney Elliot Abelson, Esq. in these 2 criminal cases. In both cases Bernstene was found not guilty and acquitted.  He did not divulge the

---

**Page 24**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

throughout at least Nevada and the rest of the United States, and possibly world-wide.

name of the owners of the Film – the Perraino brothers – at these trials.

38.   In 1976, Bernstene was rewarded by the Perraino brothers for his loyalty with a video distribution license for the Film.  Bernstene thereafter distributed the Film via home video under the license from the Perrainos through a company called TVX, Inc. ("TVX").  During this period, Bernstene and TVX distributed the Film without Copyright notice for the same reasons as with the theatrical Film prints – to avoid prosecution of the owners.  Bernstene was arrested, indicted and tried in 4 obscenity lawsuits related to this video distribution.

39.   The first two of this second round of obscenity lawsuits went forward in Los Angeles County Criminal Court in the 1978-1979 time frame.  Bernstene was represented by his same attorney, Elliot Abelson, Esq., in the first case and acquitted. He was represented by noted Pasadena attorney Michael Mayock, Esq.

---

**Page 25**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

in the second case and acquitted. Again, Bernstene did not divulge the name of the owners of the Film – the Perrainos – at these trials.

40.     Thereafter Bernstene was tried in Federal District Court in Miami, Florida for video distribution of the Film under license from the Perrainos. Bernstene was represented by Robert Eugene Smith, Esq. in both of these trials and acquitted. Again, Bernstene did not divulge the name of the owners of the Film – the Perrainos brothers – at these trials.

41.     Based upon these facts, the Film was found to be in the public domain by California District Court Judge James Otero in *V.C.X. Ltd. v. Pierre Productions*, Case No. CV-03-6660-SJO in 2004.  The defendant in that case, Pierre Productions was the Copyright owner of the Film.  Its Copyright Registration was made on December 12, 1973, which was within 5 years of its publication and is therefore presumed valid under U.S. Copyright law.

**Page 26**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

42.     Even if the Film were found not to be in the public domain, VCX is the Copyright owner of the Film.  On July 31, 1979, VCX acquired by written contract all marketable rights in the Film from Pierre.  The territory of the contract was "worldwide" and the grant was "without limitations of any kind or nature."  The term of the grant was for the full first term of copyright and any and all renewal terms so as to make the grant "to the fullest extent now or any time hereafter permitted by law."  Pierre also waived its right to terminate the transfer of copyrights to VCX pursuant to 17 U.S.C. §§ 203 and 304(c).

43.     The July 31, 1979 written contract was recorded with the United States Copyright Office on January 1, 1984 at Volume 2051 Page 417-425.

44.     The purported transfer of rights in Devil in Miss Jones from Louis Peraino to Arrow Productions was made on August 1, 1996 and was never recorded

---

**Page 27**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

1      with the Copyright Office.  In addition,
2      there are no known transfers of rights,
3      direct   or   otherwise,   from   Pierre
4      Productions to Louis Peraino.  Thus, the
5      transfer is invalid as addressed below in
6      the Statement of Issues of Law.

7

8      **Local Rule 16-3(c)(6): Plaintiff's statement of any other issues of fact or law**
9      **deemed to be material.**

10     At this time, Plaintiff does not believe there are any further issues of fact not described
11     above.  Issues of law will be addressed in Plaintiff's trial brief.

12

13     **Local Rule 16-3(c)(7): Defendant's statement of any other issues of fact or law**
14     **deemed to be material.**

15     **Defendants' Statement of Issues of Law as to Deep Throat**

16     1      In order to find publication of a film, all the court need find is "tangible copies
17     of a work are sold, leased, loaned, given away, or otherwise made available to the general
18     public." *Dolman v. Agee*, 157 F.3d 708, 713 (9th Cir. 1998).

19     2      Pursuant to 37 C.F.R. § 201.7(c)(4), a Copyright Registration will be cancelled
20     in the following instances: (ii) a work published before March 1, 1989 that was registered
21     more than 5 years after the date of first publication and the deposit copy does not contain a
22     statutory copyright notice; and (iii) the deposit copies of a work published before January 1,
23     1978 do not contain a copyright notice or the notice is defective.

24

25

26     **Page 28**

27     **PLAINTIFF'S PROPOSED PRETRIAL ORDER**
       **[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**
28

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

3       A false representation of a material fact on an application for United States Copyright voids the copyright and is a criminal offense under 17 U.S.C. § 506(e). *Russ Berrie & Co. v. Jerry Elsner Co*. 482 F. Supp. 980 (S.D.N.Y. 1980).

4       A purported assignee of a previously registered statutory copyright bears the burden of proving its chain of title, because nothing in the registration certificate itself establishes its right to claim through the original copyright claimant. *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs*., 923 F. Supp. 1231, 1244 (C.D. Cal 1995); *see also* 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11 [C] (2006).

5       In this case, Arrow Productions has the burden of establishing a chain of title originating from the registered copyright holder, Plymouth Distributors.  Because transfers of copyrights are required to be in writing under 17 U.S.C. § 204(a), the transfer(s) at issue must be in writing.  Unless Arrow Productions can meet its burden in response to this motion, its claim of copyright infringement should be dismissed. *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs*., 923 F. Supp. 1231, 1244 (C.D. Cal 1995); *see also* 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11 [C] (2006).

6       Where the applicant seeks to enforce the trademark in an action in a district court, the district court is empowered to order cancellation of the mark if it is shown that the plaintiff did not have exclusive use of the mark at the time the application is made.  *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1024 (N.D. Cal. 2008).  In the *CG Roxanne* case, the district court found that the defendant as well as third parties had widely used the mark in question and ordered that the trademark be summarily cancelled and judgment entered for the defendant.  The court made its ruling based upon the finding that "defendant provided a substantial amount of evidence regarding competitors' use of plaintiff's mark, including almost two dozen competitors using the mark." *Id*. at 1027.

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

7      Arrow's various claims under trademark law are squarely foreclosed by the Copyright Act preemption set forth at 17 U.S.C. § 301:

"On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 USCS § 106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 [17 USCS §§ 102 and 103], whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

8      The Supreme Court has ruled that the ploy of Arrow trying to use trademark laws to claim a copyright is futile.  In *G. & C. Merriam Co. v. Syndicate Publishing Co.*, 237 U.S. 618, 623 (1915) the Supreme Court ruled as follows: "[a]fter the expiration of the copyright of that character, it is well-settled that the further use of the name, by which the publication was known and sold under the copyright, cannot be acquired by registration as a trade-mark; for the name has become public property, and is not subject to such appropriation."

9      The Supreme Court in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-35 (2003) reaffirmed that trademark laws cannot be used to try to enjoin copying of communicative products.  In that case the plaintiff made the same claim that Arrow asserts in its Complaint; that distribution of a work of intellectual property could be enjoined by the Lanham Act.  In that case the Court held as follows:

---

**Page 30**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

"The problem with this argument according special treatment to communicative products is that it causes the Lanham Act to conflict with the law of copyright, which addresses that subject specifically. The right to copy, and to copy without attribution, once a copyright has expired, like the right to make an article whose patent has expired --including the right to make it in precisely the shape it carried when patented--passes to the public."

10      Arrow's trademark claims should be summarily dismissed under the Ninth Circuit holding in *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595-596 (9th Cir. 2000), the seminal case in this area.  In that case, plaintiff claimed that defendant's copying and display of a Three Stooges film violated trademarks in the "name, the characters, the likeness, and overall 'act' of The Three Stooges."  The Ninth Circuit summarily affirmed the district court's dismissal of those claims holding as follows:

"[T]he footage at issue here was clearly covered by the Copyright Act, 17 U.S.C. § 106, and the Lanham Act cannot be used to circumvent copyright law.  If material covered by copyright law has passed into the public domain, it cannot then be protected by the Lanham Act without rendering the Copyright Act a nullity." See, e.g., *Smith v. Chanel, Inc.*, 402 F.2d 562, 565 (9th Cir. 1968).

11      Numerous cases have followed the holding in *Comedy III*.  For example in *Felix the Cat Prods. v. New Line Cinema*, 54 U.S.P.Q.2D (BNA) 1856 (C.D. Cal. 2000) the court summarily dismissed a host of trademark claims similar to those raised by Arrow stating as follows:

"Reading the allegations of plaintiff's complaint broadly, it appears that plaintiff presents a straight-forward copyright case. The complaint alleges a copyright interest and unauthorized copying by defendants. In contrast, the complaint's

---

**Page 31**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

multiple attempts at invoking trademark law would require the Court to extend trademark law beyond commercial use and make actionable the expression of an idea in a motion picture. The Ninth Circuit has cautioned against "expeditions of trademark protection squarely into the domain of copyright law." *Comedy III*, 200 F.3d at 596. The Court concludes that it must heed the Ninth Circuit's warning in this case."

12     Pursuant to 15 U.S.C. 1501(a)(3)(D) a trademark applicant must certify "that no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive, except that, in the case of every application claiming concurrent use, the applicant shall--

(i) state exceptions to the claim of exclusive use; and

(ii) shall specify, to the extent of the verifier's

knowledge--

(I) any concurrent use by others;

(II) the goods on or in connection with which and the

areas in which each concurrent use exists;

(III) the periods of each use; and

(IV) the goods and area for which the applicant desires

registration."

13     Federal courts view the use of a mark by competitors in the industry of how the public perceives the mark. *Classic Foods International Corp. v. Kettle Foods Inc.*, 486 F. Supp. 2nd 1181, 1190 (C.D. Cal 2007).  Evidence of use by competitors in the industry is "probative of generic use" because the more members of the public see the purported mark

---

**Page 32**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

used by competitors in the field the less likely they will be to identify the mark with one particular producer. *Colt Defense LLC v. Bushmaster Firearms, Inc.,* 486 F. 3d 701, 706 (1st Cir. 2007). Where hundreds of competitors have used the term "Deep Throat" in titles to their films, in marketing of their films and in describing their films before and after Plaintiff's purported registration, the mark is not valid. *Krav Maga Assn. v. Yanilov*, 464 F. Supp. 2nd 981, 987-989 (C.D. Cal. 2006).

14      A successful defendant in a trademark infringement case may recover its attorney's fees where "the plaintiff's case is groundless, unreasonable, vexatious or pursued in bad faith." *Avery Dennison Corporation v. Sumpton*, 189 F. 3d 868, 881 (9th Cir. 1999); Mattel Inc. v. Walking Mountain Productions, 353 F.3d 792, 816 (9th Cir. 2003).

15      A prevailing defendant who has been wrongfully sued for trademark infringement has only one source of restitution, recovery of attorneys fees. *Scotch Whiskey Association v. Majestic Distilling Co.*, 958 F.2d 594, 600 (4th Cir. 1992). Where a plaintiff pursues trademark claims that "have no reasonable basis," a prevailing plaintiff is entitled to recovery of legal fees. *Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1156 (9th Cir. 2002).

16      Pursuant to 17 U.S.C. § 505, Costs and Attorney's Fees: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

17      Attorneys' fees and costs attributable to the defense of a meritless copyright infringement claim are awardable under § 505 of the Copyright Act. See *Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 730 (7th Cir. 1998).

---

**Page 33**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

18     "The legislative history of 17 U.S.C. § 505 provides no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). The factors in determining an attorneys' fees award must be "faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* at 534 n.19.

### Statement of Issues of Law as to Devil in Miss Jones

19     Prior to 1978, publication of a film without copyright notice thrusts the film into the public domain. 37 C.F.R. § 201.7(c)(4).

20     A purported assignee of a previously registered statutory copyright bears the burden of proving its chain of title, because nothing in the registration certificate itself establishes its right to claim through the original copyright claimant. *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 923 F. Supp. 1231, 1244 (C.D. Cal 1995); see also 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11 [C] (2006).

21     In this case, Arrow Productions has the burden of establishing a chain of title to Devil in Miss Jones originating from the registered copyright holder.  Because transfers of copyrights are required to be in writing under 17 U.S.C. § 204(a), the transfer(s) at issue must be in writing.  Unless Arrow Productions can meet its burden its claim of copyright infringement should be dismissed. *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 923 F. Supp. 1231, 1244 (C.D. Cal 1995); see also 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11 [C] (2006).

22     Where the applicant seeks to enforce the trademark in an action in a district court, the district court is empowered to order cancellation of the mark if it is shown that the plaintiff did not have exclusive use of the mark at the time the application is made.  *CG*

---

**Page 34**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

*Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1024 (N.D. Cal. 2008).  In the *CG Roxane* case, the district court found that the defendant as well as third parties had widely used the mark in question and ordered that the trademark be summarily cancelled and judgment entered for the defendant.  The court made its ruling based upon the finding that "defendant provided a substantial amount of evidence regarding competitors' use of plaintiff's mark, including almost two dozen competitors using the mark." *Id*. at 1027.

23    Arrow's various claims as to Devil in Miss Jones under trademark law are squarely foreclosed by the Copyright Act preemption set forth at 17 U.S.C. § 301:

"On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 USCS § 106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 [17 USCS §§ 102 and 103], whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

24    The Supreme Court has ruled that the ploy of Arrow trying to use trademark laws to claim a copyright is futile.  In *G. & C. Merriam Co. v. Syndicate Publishing Co.*, 237 U.S. 618, 623 (1915) the Supreme Court ruled as follows: "[a]fter the expiration of the copyright of that character, it is well-settled that the further use of the name, by which the publication was known and sold under the copyright, cannot be acquired by registration as a trade-mark; for the name has become public property, and is not subject to such appropriation.

---

**Page 35**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

25     The Supreme Court in *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 33-35 (2003) reaffirmed that trademark laws cannot be used to try to enjoin copying of communicative products.  In that case the plaintiff made the same claim that Arrow asserts in its Complaint; that distribution of a work of intellectual property could be enjoined by the Lanham Act.  In that case the Court held as follows:

"The problem with this argument according special treatment to communicative

products is that it causes the Lanham Act to conflict with the law of copyright,

which addresses that subject specifically. The right to copy, and to copy without

attribution, once a copyright has expired, like the right to make an article whose

patent has expired --including the right to make it in precisely the shape it carried

when patented--passes to the public."

26     Arrow's trademark claims should be summarily dismissed under the Ninth Circuit holding in *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595-596 (9th Cir. 2000), the seminal case in this area.  In that case, plaintiff claimed that defendant's copying and display of a Three Stooges film violated trademarks in the "name, the characters, the likeness, and overall 'act' of The Three Stooges."  The Ninth Circuit summarily affirmed the district court's dismissal of those claims holding as follows:

"[T]he footage at issue here was clearly covered by the Copyright Act, 17 U.S.C.

§ 106, and the Lanham Act cannot be used to circumvent copyright law.  If

material covered by copyright law has passed into the public domain, it cannot then

be protected by the Lanham Act without rendering the Copyright Act a nullity."

See, e.g., *Smith v. Chanel, Inc*., 402 F.2d 562, 565 (9th Cir. 1968).

27     Numerous cases have followed the holding in *Comedy III*.  For example in *Felix the Cat Prods. v. New Line Cinema*, 54 U.S.P.Q.2D (BNA) 1856 (C.D. Cal. 2000) the

---

**Page 36**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

1   court summarily dismissed a host of trademark claims similar to those raised by Arrow

2   stating as follows:

3       "Reading the allegations of plaintiff's complaint broadly, it appears that plaintiff

4       presents a straight-forward copyright case. The complaint alleges a copyright

5       interest and unauthorized copying by defendants. In contrast, the complaint's

6       multiple attempts at invoking trademark law would require the Court to extend

7       trademark law beyond commercial use and make actionable the expression of an

8       idea in a motion picture. The Ninth Circuit has cautioned against "expeditions of

9       trademark protection squarely into the domain of copyright law." *Comedy III*, 200

10      F.3d at 596. The Court concludes that it must heed the Ninth Circuit's warning

11      in this case."

12      28    Pursuant to 15 U.S.C. 1501(a)(3)(D) a trademark applicant must certify "that

13  no other person has the right to use such mark in commerce either in the identical form

14  thereof or in such near resemblance thereto as to be likely, when used on or in connection

15  with the goods of such other person, to cause confusion, or to cause mistake, or to deceive,

16  except that, in the case of every application claiming concurrent use, the applicant shall--

17      (i) state exceptions to the claim of exclusive use; and

18      (ii) shall specify, to the extent of the verifier's

19   knowledge--

20          (I) any concurrent use by others;

21          (II) the goods on or in connection with which and the

22       areas in which each concurrent use exists;

23          (III) the periods of each use; and

24

25

---

**Page 37**

1    (IV) the goods and area for which the applicant desires

2    registration."

3        29    An application for Trademark will be refused where it identifies only the name

4 of a featured performer(s) on a sound or video recording, it does not function as a trademark

5 to identify and distinguish applicant's goods from those of others and to indicate the source

6 of applicant's goods/services.  Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§1051-1052,

7 1127; *see In re Polar Music Int'l AB*, 714 F.2d 1567, 221 USPQ 315 (Fed. Cir. 1983); *In re*

8 *Spirer*, 225 USPQ 693 (TTAB 1985); TMEP §§904.07(b), 1202.09(a).

9        30    A Trademark applicant, where the mark is the name of a performer, must

10 provide proof that "the name is used on a series of sound/video recordings, and (b) the name

11 is promoted and recognized by others as the source of the series of sound/video recordings."

12 *See* TMEP §1202.09(a)-(a)(ii)(A); *cf. In re First Draft, Inc.*, 76 USPQ2d 1183, 1190 (TTAB

13 2005).  The applicant must provide evidence that the name is promoted and recognized by

14 others as a source of the series includes advertising that promotes the name as the source of

15 the series, third-party reviews showing use of the name by others to refer to the series, and/or

16 declarations from the sound recording industry, retailers, and purchasers showing recognition

17 of the name as an indicator of the source of a series of recordings.    TMEP

18 §1202.09(a)(ii)(A); *cf. In re First Draft*, 76 USPQ2d at 1191; *In re Scholastic, Inc.*, 23

19 USPQ2d 1774, 1777-78 (TTAB 1992).

20        31    A Trademark applicant, where the mark is the name of a performer, must

21 provide proof that "the name is used on a series of sound/video recordings, and (b) the

22 performer controls the quality of the recordings and controls the use of the name, such that

23 the name has come to represent an assurance of quality to the public."  TMEP §1202.09(a)-

24 (a)(ii), (a)(ii)(B); *see In re Polar Music*, 714 F.2d at 1572, 221 USPQ at 318; *In re First*

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

*Draft*, 76 USPQ2d at 1189-90….Evidence of control over the quality of the recordings and use of the name includes licensing contracts or similar documentation.   TMEP §1202.09(a)(ii)(B); *see In re Polar Music*, 714 F.2d at 1568-72, 221 USPQ at 316-18.

      32    A successful defendant in a trademark infringement case may recover its attorney's fees where "the plaintiff's case is groundless, unreasonable, vexatious or pursued in bad faith." *Avery Dennison Corporation v. Sumpton*, 189 F. 3d 868, 881 (9th Cir. 1999); *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 816 (9th Cir. 2003).

      33    A prevailing defendant who was been wrongfully sued for trademark infringement has only one source of restitution, recovery of attorneys fees. *Scotch Whiskey Association v. Majestic Distilling Co.*, 958 F.2d 594, 600 (4th Cir. 1992).  Where a plaintiff pursues trademark claims that "have no reasonable basis," a prevailing plaintiff is entitled to recovery of legal fees. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002).

      34    Pursuant to 17 U.S.C. § 505, Costs and Attorney's Fees: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

      35    Attorneys' fees and costs attributable to the defense of a meritless copyright infringement claim are awardable under § 505 of the Copyright Act. See *Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 730 (7th Cir. 1998).

      36    "The legislative history of 17 U.S.C. § 505 provides no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). The factors in determining an attorneys'

---

**Page 39**

fees award must be "faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id*. at 534 n.19.

37      A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent. 17 U.S.C. §204.

38      As between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within one month after its execution in the United States or within two months after its execution outside the United States, or at any time before recordation in such manner of the later transfer. Otherwise the later transfer prevails if recorded first in such manner, and if taken in good faith, for valuable consideration.  17 U.S.C. §204(d).

### Local Rule 16-3(c)(4): A statement of the contested issues of fact in the case as agreed upon by the parties.

1.      Whether the motion picture Deep Throat was published without a copyright notice and therefore is in the public domain.

2.      Whether Plaintiff owns the copyright to Deep Throat.

3.      Whether the motion picture Devil in Miss Jones was published without a copyright notice and therefore is in the public domain.

4.      Whether Plaintiff owns the copyright to Devil in Miss Jones.

5.      Whether Deep Throat® is an enforceable trademark owned by Plaintiff.

6.      Whether Devil in Miss Jones® is an enforceable trademark owned by Plaintiff.

7.      Whether Linda Lovelace® is an enforceable trademark owned by Plaintiff.

---

**Page 40**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

8.      What is the appropriate measure of damages?

**Local Rule 16-3(c)(5): A statement of the contested issues of law in the case as agreed upon by the parties.**

1.      What is the identity of the owner of the copyright to DEEP THROAT?

2.      Is the copyright to the motion picture DEEP THROAT valid?

3.      What is the identity of the owner of the copyright to DEVIL IN MISS JONES?

4.      Is the copyright to the motion picture DEVIL IN MISS JONES valid?

5.      Does Plaintiff Arrow Productions, Ltd. have the right to enforce the trademark DEEP THROAT®?

6.      Does Plaintiff Arrow Productions, Ltd. have the right to enforce the trademark LINDA LOVELACE™?

7.      Does Plaintiff Arrow Productions, Ltd. have the right to enforce the trademark DEVIL IN MISS JONES®?

8.      What is the appropriate measure of damages?     The amount of damages. Plaintiff has the right to elect between statutory and actual damages at any time before judgment.

Note: Plaintiff does not believe that the issues of attorneys fees and costs are relevant to the pretrial order.  However, Defendants insist on including the issue.

9.      Whether Plaintiff is entitled to attorneys fees as a prevailing party.

10.     Whether Plaintiff's claim of Trademark infringement in regard to Deep Throat is so lacking in merit as to result in the award of attorneys' fees and costs to Defendants.

---

**Page 41**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

11.     Whether Plaintiff's claim of Trademark infringement in regard to Linda Lovelace is so lacking in merit as to result in the award of attorneys' fees and costs to Defendants.

12.     Whether Plaintiff's claim of Trademark infringement in regard to Devil in Miss Jones is so lacking in merit as to result in the award of attorneys' fees and costs to Defendants.

13.     Whether Plaintiff's claim of Copyright infringement in regard to Deep Throat is so lacking in merit as to result in the award of attorneys' fees and costs to Defendants.

14.     Whether Plaintiff's claim of Copyright infringement in regard to Devil in Miss Jones is so lacking in merit as to result in the award of attorneys' fees and costs to Defendants.

**Local Rule 16-3(c)(8): Lists or schedules of all exhibits that will be offered in evidence by the parties at the trial. Such lists or schedules shall describe the exhibits sufficiently for ready identification.**

Note: Because discovery is not complete and because the parties have not exchanged all of the exhibits, each side reserves the right to interpose objections to the exhibits of the other once discovery is complete and exhibits have been exchanged.  The parties will accomplish this within 14 days after the conclusion of the impending settlement conference.

**(A) The exhibits the parties agree can be admitted at trial..**

None at this time; however the parties will confer and arrive at a stipulation within 14 days of the conclusion of the settlement conference.

---

**Page 42**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

**(B) Exhibits to which objection is made and state the grounds therefor.**

**Plaintiff's Exhibits:**

1.     Filings from the United States Copyright Office concerning the motion picture DEEP THROAT.

2.     Filings from the United States Copyright Office concerning the motion picture DEVIL IN MISS JONES.

3.     Trademark registration in the United States Patent and Trademark Office for the mark DEEP THROAT®.

4.     Trademark registration with the Nevada Secretary of State for the mark DEEP THROAT®.

5.     Trademark registration in the United States Patent and Trademark Office for the mark LINDA LOVELACE®.

6.     Trademark registration with the Nevada Secretary of State for the mark LINDA LOVELACE®.

7.     Copies of DEEP THROAT purchased by Plaintiff and sold by Defendant V.C.X., Ltd.

8.     Copies of DEVIL IN MISS JONES purchased by Plaintiff and sold by Defendant V.C.X., Ltd.

9.     Financial records of Defendant V.C.X., Ltd. produced in response to Plaintiff's discovery request concerning the exploitation of the copyrights and trademarks associated with the motion picture DEEP THROAT and establishing the amount of income generated by Defendant V.C.X., Ltd. therefrom.

10.    Financial records of Defendant V.C.X., Ltd. produced in response to Plaintiff's discovery request concerning the exploitation of the copyrights and trademarks associated

---

**Page 43**

with the motion picture DEVIL IN MISS JONES and establishing the amount of income generated by Defendant V.C.X., Ltd. therefrom.

11.   Videotapes of DEEP THROAT.

12.   Videotape of DEVIL IN MISS JONES.

13.   Film print of DEVIL IN MISS JONES.

14.   Documents establishing the chain of title to DEEP THROAT.

15.   Documents establishing the chain of title to DEVIL IN MISS JONES.

16.   Letter concerning Plymouth Distributors, Inc.

17.   Ruling of United States District Court for the Central District of California in 2005, establishing the copyright ownership of DEVIL IN MISS JONES.

Plaintiff is unaware what, if any, objections that the Defendants will advance to any of the above.

**Defendants' Exhibits:**

1.   Nine page printout dated May 26, 2011 from the Internet Adult Film Data Base listing films using the term "Deep Throat;"

2.   Printouts from various adult film web sites offering for sale numerous films using the term "Deep Throat" in their titles and in adverting;

3.   May 26, 2011 printout from United States Copyright Office records of registered films and other works using the term "Deep Throat;"

4.   Copy of Page 449 of The X-Rated Videotape Star Index Volume III by Patrick Riley listing adult films starring Linda Lovelace;

5.   May 26, 2011 printout from United States Copyright Office records of registered films and other works using the term "Devil in Miss Jones;"

---

**Page 44**

6.      May 26, 2011 printout from Internet Adult Film Data Base listing films using the term "Devil in Miss Jones;"

7.      Printouts from various adult film web sites offering for sale numerous films using starring Linda Lovelace and using Linda Lovelace in their advertising and descriptions of the films;

8.      December 12, 1973 certified Copyright Registration LP 42873 made by Pierre Productions, Inc. related to the film Devil in Miss Jones;

9.      Contract dated July 31, 1979 between VCX and Pierre Productions transferring rights to VCX in the film Devil in Miss Jones and proof of recordation of said contract with the U.S. Copyright Office;

10.     October 28, 2004 Final Judgment of Judge Otero related to Devil in Miss Jones in the matter of *V.C.X. Ltd. v. Pierre Productions*, Case No. CV-03-6660-SJO ;

11.     August 27, 2004 Opinion of Judge Otero related to Devil in Miss Jones in the matter of *V.C.X. Ltd. v. Pierre Productions*, Case No. CV-03-6660-SJO finding the film to be in public domain;

12.     July 28, 2004 Declaration of Charles Bernstene filed in the matter of *V.C.X. Ltd. v. Pierre Productions*, Case No. CV-03-6660-SJO supporting the finding that Devil in Miss Jones is in public domain;

13.     Certified copy of March 5, 1979 Copyright Registration PA 24-168 made by International Home Entertainment, Inc. related to videotape version of the film Deep Throat;

14.     Certified copy of March 19, 1979 Copyright Registration PA 25-575 made by Plymouth Distributors, Inc. related to theatrical version of the film Deep Throat;

---

**Page 45**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

15.     Copy of New Jersey Secretary of State Corporate Record No. 7094240000 related to Plymouth Distributors, Inc. certifying that it was first formed by Joseph Perraino on January 9, 1975;

16.     Plaintiff's June 10, 2004 Application for Federal Trademark Registration of term "Deep Throat:"

17.     January 11. 2005 notice from Trademark Office refusing registration of term "Deep Throat:"

18.     February 17, 2005 response of Plaintiff to Trademark Office notice of refusal of registration for term "Deep Throat;"

19.     February 25, 2005 Trademark Office amendment of application for registration of "Deep Throat:"

20.     October 27, 2005 United States Trademark Registration No. 2,993,913 for "Deep Throat" issued to Arrow Productions;

21.     February 23, 2009 Nevada Trademark Registration Form No. 20090169769-49 made by Arrow Productions for the mark "Deep Throat:"

22.     September 27, 2007 application for Federal Registration of term "Devil in Miss Jones" made by Plaintiff;

23.     Various communications between the Trademark Office and Plaintiff related to defects in application for "Devil in Miss Jones:"

24.     August 12, 2008 Federal Trademark Registration for term "Devil in Miss Jones" issued to Plaintiff;

25.     Notice of abandonment issued by Trademark Office for Application No. 78869507 for registration of term "Deep Throat;"

---

**Page 46**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

26.     United States Trademark application No. 85187559 for the standard characters "Linda Lovelace" made by Plaintiff on November 30, 2010;

27.     Various communications between Trademark Office and Plaintiff regarding Trademark application No. 85187559 for the standard characters "Linda Lovelace;"

28.     March 17, 2009 Nevada Trademark Registration Form No. 2090259234-96 made by Arrow Productions for the mark "Devil in Miss Jones:"

29.     August 29, 1996 Agreement between Louis Peraino and Arrow Productions transferring the rights that Peraino possessed to certain films;

30.     Arrow Production Profit and Loss Statements from 1998 through 2010;

31.     Series of 3 cease and desist letters issued on January 8, 2008 and December 8, 2003 on the part of Arrow Productions related to the Trademark "Deep Throat:"

32.     Arrow Production sales records for the film Devil in Miss Jones from 2006 through 2010;

33.     Arrow Production sales records for the film Deep Throat from 2006 through 2010;

34.     Series of contracts recorded with the United States Copyright Office transferring rights in the film Deep Throat;

35.     Series of contracts recorded with the United States Copyright Office transferring rights in the film Devil in Miss Jones;

36.     Copies of videotapes and DVD along with box covers/sleeves for film Devil in Miss Jones offered for sale by VCX since 1979;

37.     Various correspondence between Plaintiff and Defendants notifying Plaintiff of intent to seek legal fees for frivolous actions related to this matter.

---

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

**Local Rule 16-3(c)(9): A statement by each party identifying any depositions intended to be offered at the trial, except for impeachment purposes, and designating the portions of the deposition to be offered.**

The parties do not anticipate the introduction of any depositions at this time. However, deposition testimony may prove necessary owing to unavailability of witnesses.

**Local Rule 16-3(c)(10): A statement of the objections, and the grounds therefor, to deposition testimony the opposing party has designated.**

Does not apply at this time.

**Local Rule 16-3(c)(11): A list of witnesses, with their addresses, who may be called at the trial.**

**Plaintiff's Witnesses:**

38.    Raymond Pistol, c/o Arrow Productions, Ltd., 631 Las Vegas Boulevard South, Las Vegas, NV 89101; (702) 453-7938; will be called.

39.    Charles Bernstene, c/o Arrow Productions, Ltd., 631 Las Vegas Boulevard South, Las Vegas, NV 89101; (702) 453-7938; will be called.

40.    Paul Bloch, c/o Arrow Productions, Ltd., 631 Las Vegas Boulevard South, Las Vegas, NV 89101; (702) 453-7938; will be called.

41.    Defendant David H. Sutton, c/o Defendant V.C.X., Ltd., may be called.

42.    Beau Buchanon, 3914 Centre Street, #12, San Diego, CA 92103; phone (818) 559-3676; may be called.

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

K:\Files\Pistol 0518\VCX 002\11-010 -p-Joint Pretrial Order (Revised).wpd

**Defendants' Witnesses:**

1       David Sutton, VCX, Inc., Phone (702) 638-4321, 3430 Precision Blvd. N. Las Vegas, Nevada 89032;

2       Charles Bernestene, 631 Las Vegas Blvd., South Las Vegas, NV 89101, Phone 702-453-7938;

3       Raymond Pistol, 631 Las Vegas Blvd., South Las Vegas, NV 89101, Phone 702-453-7938;

4       Bob Weir, Government Liaison Services, 200 N. Glebe Road, Suite 321, Arlington, VA 22203, Phone (703) 525-8451; Plaintiff objects to this witness for Defendants' failure to make timely disclosure pursuant to FED. R. CIV. PROC. 26(a)(1);

5       James Bochis, address and phone number presently unknown; Plaintiff objects to this witness for Defendants' failure to make timely disclosure pursuant to FED. R. CIV. PROC. 26(a)(1);

6       Discovery is continuing and Defendants reserve the right to identify and call as additional witnesses persons who may be identified during discovery or whose testimony may be required in regard to issues raised in said discovery;  Plaintiff objects to any further defense witness for Defendants' failure to make timely disclosure pursuant to FED. R. CIV. PROC. 26(a)(1) except to the extent that the identity of a new witness becomes first known to the defendant during the remaining depositions of Raymond Pistol or Beau Buchanan.

\\\
\\\
\\\
\\\
\\\

---

**Page 49**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**

**(12) A list of motions in limine filed, if any.**

Because this is to be a court trial, neither party anticipates filing any motion in limine.

Dated: May 31, 2011.                    Respectfully Submitted,

CLYDE DeWITT
LAW OFFICES OF CLYDE DeWITT, APC

ALLEN LICHTENSTEIN, ESQ.


By:  /s/ Clyde DeWitt
            Clyde DeWitt

Counsel for Plaintiff,
Arrow Productions, Ltd.

TIMOTHY C. RILEY
LAW OFFICES OF TIMOTHY C. RILEY


By:  /s/ Timothy C. Riley
            Timothy C. Riley

Counsel for Defendants,
VCX, Ltd. and David Sutton

---

**Page 50**

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**
**[Local Rules 16-3(c), 16(4) and 26-1(e)(5)]**

**Case Number 2:09-cv-0737-PMP-PAL**